STATE of Wisconsin, Plaintiff-Respondent,

v.

Sebastian "Frank" BUSTAMANTE, Defendant-Appellant.

Court of Appeals

*No. 95–2428–CR. Submitted on briefs January 30, 1996.—Decided April 9, 1996.*

(Also reported in 549 N.W.2d 746.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha E. Gaines*, of the University of Wisconsin Law School, Legal Assistance Program, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Gregory Posner-Weber,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Sebastian "Frank" Bustamante appeals his conviction for second-degree murder of his son, Jason, contrary to § 940.02(1), STATS., 1977,[1] after a jury trial. Bustamante argues the trial court

---

[1] Although Bustamante was not tried and convicted until 1994, the child died in 1978, when the crime charged was known as second-degree murder. Section 940.02(1), STATS., 1977, provided in relevant part:

> Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:
> (1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life;

While the offense was renamed first-degree reckless homicide when § 940.02(1) was amended in 1987, the Judicial Council noted that the new offense was analogous to the prior offense of second-degree murder. Judicial Council Note, 1988, § 940.02(1), STATS.

improperly admitted other acts evidence that unfairly prejudiced his defense and, therefore, his conviction should be reversed and the case should be remanded for a new trial. We disagree and affirm the conviction.

Jason was nearly one year old in 1978 when his parents, Bustamante and Mary Hunt, took him to the hospital because he was pale, rigid and unresponsive. When they arrived at the emergency room, Dr. John Cassidy examined Jason. Cassidy testified at trial that Jason was comatose and could not be aroused to anything resembling consciousness. Jason died from his injuries three days later. Dr. Darrell Skarphol conducted an autopsy and later testified that Jason died from severe head injuries, including two wide, long skull fractures.

The State's theory was that Bustamante injured Jason earlier on the day he was brought to the hospital by either shaking, striking or throwing the child in the child's bedroom while Mary was unloading groceries in the kitchen. Although Bustamante did not testify at trial, he told police during the investigation that he and Mary both heard a thump and ran into Jason's bedroom where they found Jason on the floor, having apparently fallen from his crib.[2]

At trial, the State introduced "other acts" evidence that Bustamante was involved in the abuse of another young child. The incident occurred in Milwaukee in 1989, when Bustamante was living with his girlfriend, Laura, and Laura's newborn daughter, Bianca T. Laura testified she took Bianca to the hospital after Bianca became fussy and refused to eat. Dr. Shelly Wernick testified that she examined Bianca and

---

[2] In statements to police, Bustamante also offered alternative explanations for Jason's injuries, which will be discussed later in this opinion.

567

determined that Bianca had a skull fracture, blood clots over her brain and bruising of the brain itself. Wernick also testified that Bianca was malnourished and at four months of age, appeared to be a newborn. Doctors performed emergency procedures on Bianca and she survived.

Additionally, several witnesses testified that they heard Bustamante threaten Bianca in the same month she was taken to the hospital. One witness testified he heard Bustamante say, "I'm going to kill this fucking baby." Another witness testified he heard Bustamante call Bianca "a fucking bitch" and say he was going to kill her.

In a pretrial motion in limine, the State argued that Bustamante had injured Bianca and that the circumstances surrounding the injuries to Jason and Bianca were so similar that Bianca's injury should be admitted as evidence of Bustamante's identity and absence of mistake or accident. Bustamante opposed the motion, arguing there was insufficient evidence that Bustamante had injured Bianca, the events were insufficiently similar and the evidence was unfairly prejudicial. In a written decision, the trial court concluded the evidence could be offered to prove absence of mistake or accident. *See* § 904.04(2), STATS. Ultimately, the trial court instructed the jury that the evidence was to be used only for the limited purpose of showing absence of mistake or accident and identity.[3]

On appeal, Bustamante argues evidence concerning the Milwaukee incident should not have been admitted as other acts evidence for three reasons: (1) The evidence presented at trial was insufficient to

---

[3] The record does not reflect when or why the trial court decided the other acts evidence was also admissible to prove identity.

permit a reasonable jury to find, by a preponderance of the evidence, that Bustamante injured Bianca; (2) the Milwaukee incident evidence was improperly admitted for the purpose of showing identity, or absence of mistake or accident; and (3) the probative value of the evidence concerning the Milwaukee incident outweighed its prejudicial effect.

 The decision to admit evidence under § 904.04(2), STATS.,[4] is within the trial court's sound discretion and will not be upset on appeal if the decision has a reasonable basis and was made in accordance with accepted legal principles. *State v. Wagner*, 191 Wis. 2d 322, 330, 528 N.W.2d 85, 88 (Ct. App. 1995). In deciding whether to admit other acts evidence, the trial court must apply a two-part test. *State v. Kuntz*, 160 Wis. 2d 722, 746, 467 N.W.2d 531, 540 (1991). The trial court must first determine whether the evidence is offered for a purpose admissible under § 904.04(2). *Id.* If the trial court finds it is, the trial court must then determine whether the probative value of such evidence is substantially outweighed by the prejudicial value of the evidence. *Id.*; § 904.03, STATS.[5]

---

[4] Section 904.04(2), STATS., provides in relevant part:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[5] Section 904.03, STATS., provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

A question implicit within the two-part test is whether the other acts evidence is relevant to an issue in the case. *State v. Landrum,* 191 Wis. 2d 107, 119, 528 N.W.2d 36, 41 (Ct. App. 1995). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Section 904.01, STATS. Under § 904.04(2), STATS., other acts evidence is relevant if a reasonable jury could find by a preponderance of the evidence that the defendant committed the other act. *Landrum,* 191 Wis. 2d at 119-20, 528 N.W.2d at 41. Whether a jury could find a defendant committed another act by a preponderance of the evidence is a question of law the trial court decides without weighing credibility or determining whether the government proved the defendant committed the act. *See State v. Schindler,* 146 Wis. 2d 47, 54, 429 N.W.2d 110, 113 (Ct. App. 1988). On appeal, we review the trial court's determination de novo. *See id.*

A threshold issue is whether Bustamante preserved his claim of error for appeal. The other acts issue was first raised before trial when the State filed a pretrial motion in limine to admit the evidence. Bustamante opposed the motion, but the trial court determined the State could present evidence of the Milwaukee incident as proof of absence of mistake or accident. The trial court made this decision based on testimony from the preliminary hearing regarding Bianca's injuries, and the State's offers of proof in its written motion and at the motion hearing. At trial,

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

570

Bustamante did not renew his objection to the other acts evidence.

■■■

This court has held that a defendant who has raised a motion in limine generally preserves the right to appeal the ruling on the motion without also objecting at trial. *See State v. Bergeron*, 162 Wis. 2d 521, 528, 470 N.W.2d 322, 324 (Ct. App. 1991). However, the appellate courts have not addressed whether the same right is preserved when the defendant only opposes the State's motion in limine and does not object at trial. We conclude that a defendant who opposes the State's motion in limine generally preserves the right to appeal on the issue raised by the motion without also objecting at trial. Therefore, because Bustamante opposed the State's motion in limine, he preserved his objection to the trial court's pretrial ruling.

■■■

However, although Bustamante has preserved the trial court's pretrial ruling, he is limited to making the same arguments on appeal that he made at the pretrial hearing on the admissibility of the evidence. *See In re C.A.K.*, 154 Wis. 2d 612, 624, 453 N.W.2d 897, 902 (1990) (reviewing court will not consider argument raised for first time on appeal or review). This rule of law is significant in this case because the basis of two of Bustamante's arguments is that the evidence at trial differed in significant ways from the evidence available to the trial court when it made its decision on the motion in limine.[6]

---

[6] Bustamante argues the evidence upon which the trial court based its decision differed from the evidence presented at trial in several respects. Most notably, the trial court in its written decision on the motion in limine noted that Bianca's

571

Specifically, Bustamante argues that based on the evidence presented at trial, a reasonable jury could not find by a preponderance of the evidence that Bustamante injured Bianca. Bustamante also argues that because the testimony was notably different at trial than at the motion in limine, the trial court could not have reasonably exercised its discretion when it determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defendant, since the trial court's analysis was based on inaccurate information. We conclude that because Bustamante did not call to the trial court's attention his contention that the evidence presented at trial differed from the evidence available before trial upon which the trial court based its decision, Bustamante cannot make these arguments for the first time on appeal. *See C.A.K.*, 154 Wis. 2d at 624, 453 N.W.2d at 902; § 901.03(1)(a), STATS. It was not the responsibility of the trial court to sua sponte

mother was expected to testify that "she left the defendant alone with the child and upon returning home, [Bustamante] would not let her near the child. When the child exhibited symptoms including not breathing and turning blue the child was taken to a hospital and it was determined that she had two skull fractures." At trial, Bianca's mother testified that she did not take Bianca to the hospital until five days after Bustamante baby-sat Bianca. Additionally, the examining physician testified at trial that in his opinion, Bianca had been injured within a day of being brought to the hospital and that it was unlikely the injury occurred three or four days beyond that. Given this testimony, Bustamante argues on appeal that there was insufficient evidence upon which a jury could reasonably conclude he caused Bianca's injuries, because if the doctor's opinion is credible, Bianca's injuries were not caused during the time Bustamante was baby-sitting.

reconsider its earlier ruling admitting the evidence, although it could have done so. Instead, it was Bustamante's responsibility to raise the issue when it appeared the evidence presented differed from that offered before trial.[7] *See Bergeron,* 162 Wis. 2d at 529, 470 N.W.2d at 325 (If the issue raised by appeal is different in fact or law from that presented by the motion in limine, then waiver may be found if no objection was made at trial.); *McClelland v. State,* 84 Wis. 2d 145, 157-58, 267 N.W.2d 843, 848-49 (1978) (An appellant may lose the right to complain that the trial court failed to exercise discretion if the appellant failed to request the court to do so.).

Therefore, although Bustamante's objection at the motion in limine preserved his right to appeal the pretrial ruling, we need not consider his two arguments that are based entirely on the evidence to which Bustamante did not object at trial. *See State v. Foley,* 153 Wis. 2d 748, 754, 451 N.W.2d 796, 798 (Ct. App. 1989) ("We will not overturn a discretionary determination on a ground not brought to the attention of the trial court."). Thus, the only argument we address is whether the trial court reasonably exercised its discretion when it determined, based on the evidence available at the motion in limine, that the other acts evidence was offered for a purpose admissible under § 904.04(2), STATS. Bustamante

---

[7] The record does not reveal counsel's strategy. Counsel, as a matter of trial strategy, may have decided to focus on arguing to the jury that the Milwaukee evidence was incredible, rather than asking the trial court to tell the jury to disregard the evidence. Such a strategy can be effective, because once the evidence is stricken, counsel cannot comment on it, even if counsel suspects the jury will have difficulty disregarding the evidence.

argues the trial court erroneously concluded that evidence of the Milwaukee incident was admissible to show absence of mistake or accident.[8]

In *King v. State*, 75 Wis. 2d 26, 248 N.W.2d 458 (1977), our supreme court held that other acts evidence offered in the state's rebuttal case was relevant to the issues of intent and absence of mistake or accident. *Id.* at 43, 248 N.W.2d at 467. The defendant in *King* was charged with first-degree murder for shooting his girlfriend in the head. *Id.* at 27, 248 N.W.2d at 459. The defendant testified he did not think the gun was loaded at the time of the shooting. *Id.* at 38, 248 N.W.2d at 464. Additionally, a psychologist testified that the defendant possessed a passive-aggressive personality, was not unduly hostile or aggressive and that his typical response to stress would be withdrawal or nonresponse rather than an overt hostile act. *Id.* Finally, a psychologist testified that the events leading up to the shooting did not offer sufficient provocation for the defendant to intend to kill the victim. *Id.* On rebuttal, the state produced evidence of two prior specific instances where the defendant brandished weapons and threatened to or beat the victim. *Id.* at 40, 248 N.W.2d at 465. Our supreme court held such evidence was admissible under several theories, including that it was admissible as proof of intent and

[8] Bustamante also argues that other acts evidence was inadmissible to prove identity. Because we conclude the Milwaukee incident evidence was offered for a purpose admissible under § 904.04(2), STATS., proving absence of mistake or accident, it is not necessary to our holding in this case to determine whether the Milwaukee incident testimony was also admissible for identity purposes. *See State v. Fishnick*, 127 Wis. 2d 247, 262, 378 N.W.2d 272, 280 (1985).

absence of mistake or accident. *Id.* at 43, 248 N.W.2d at 467.

Bustamante acknowledges that courts in Wisconsin have allowed other acts evidence to be used to prove the absence of mistake or accident when intent is an element of the crime, or when the defendant contends that he or she committed the crime accidently. Bustamante argues, however, that intent is not an element of second-degree murder and that he did not claim to have committed the act accidently.

In response, the State argues that there is a general intent element to second-degree murder and that when a jury must decide who caused a child's death, and whether the death was intentional or accidental, evidence of prior maltreatment of a child under the defendant's care is relevant and admissible to show the victim's death was not caused accidentally, even if the defendant claims he was not involved in causing the victim's death. The State argues the probative value of the prosecution's other acts evidence to show absence of mistake or accident is based on the doctrine of chances. Under the State's theory, evidence of the Milwaukee incident could be offered to prove that Jason did not fall out of the crib accidently.

Because we conclude the other acts evidence was properly offered to negate statements Bustamante made that suggest he accidently caused Jason's fatal injuries, we need not consider whether, under the State's doctrine of chances theory, the other acts evidence was also properly admitted to prove that Jason did not accidently fall out of the crib. *See State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 420 (Ct. App. 1989) (An appellate court should dispose of an appeal on the narrowest possible ground.).

We conclude the other acts evidence was properly offered to negate statements Bustamante made to police officers investigating the case in which he suggested he accidently caused Jason's injuries. In addition to telling the police he was never in Jason's room before Jason fell out of the crib, Bustamante offered alternative explanations for Jason's fatal injuries that were ultimately introduced at trial through his statements to the officers. In one interview, Bustamante claimed that two days before Jason was taken to the hospital, he and Jason were playing on the floor in the living room. Bustamante explained he was lying on the ground with Jason on his chest, giving Jason a pony ride. Bustamante said Jason slipped backwards and that his head struck a wooden table twice as he slipped. Bustamante also said Jason seemed groggy after this incident.

In another interview, Bustamante said that two days before Jason was taken to the hospital, he was watching Jason in the late afternoon while Mary was at work. Bustamante said that when Jason awoke from his nap, Bustamante took him to the kitchen and was throwing the child up in the air and catching him. Bustamante said that the fourth time he threw Jason up in the air, the child flipped over Bustamante's forearm and fell to the floor, hitting his head. Bustamante said Jason became unconscious and remained that way for several hours. These two statements placed at issue the question of whether Jason's injuries were the result of an accident or mistake on the part of the defendant.

By offering these explanations, Bustamante suggested that he may have accidently caused Jason's

fatal injuries two days before Jason was taken to the hospital. Our supreme court has held the state can produce evidence of prior threats and abuse in a second-degree murder case where such evidence is probative to negate a defendant's claim of accidental striking or misadventure. *See Kasieta v. State*, 62 Wis. 2d 564, 576, 215 N.W.2d 412, 418 (1974). Accordingly, we conclude the other acts evidence was properly offered as proof of absence of mistake or accident.[9]

In sum, we conclude that evidence of the Milwaukee incident was properly offered to show absence of mistake or accident, a purpose admissible under § 904.04(2), STATS. Additionally, for the reasons discussed in this opinion, we have not considered Bustamante's arguments that he did not commit the other act and that the prejudicial nature of the evidence outweighs its probative value. Therefore, we will not disturb the trial court's determination on those issues. Thus, Bustamante's challenge to the other acts evidence fails and his conviction is affirmed. Because we have rejected Bustamante's claim of error, we do not consider the State's arguments concerning harmless error.

*By the Court.*—Judgment affirmed.

---

[9] Although this was not the basis upon which the trial court determined the other acts evidence was properly offered to show absence of mistake or accident, we are free to examine a ground other than that relied on by the trial court if the alternate ground results in an affirmance. *See State v. Heyer*, 174 Wis. 2d 164, 170, 496 N.W.2d 779, 781 (Ct. App. 1993).