STATE of Wisconsin, Plaintiff-Respondent,†

v.

Michael L. VEACH, Defendant-Appellant.‡

Court of Appeals

*No. 98–2387–CR. Oral argument April 19, 2001.—Decided May 10, 2001.*

## 2001 WI App 143

(Also reported in 630 N.W.2d 256.)

†Petition to review granted.
‡Petition for cross review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Dykman, P.J., Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. Michael Stephen Veach appeals a judgment of conviction for two counts of first-degree sexual assault of a child in violation of WIS. STAT. § 948.02(1) (1997–98),[1] and the order denying his motion for postconviction relief. He contends the trial court erroneously exercised its discretion in admitting evidence that eleven years ago he engaged in sexual acts with his daughter; he also contends he was denied effective assistance of counsel because his trial counsel did not know he could exclude this evidence by stipulating to certain elements of the charged crime. We conclude the trial court's decision to allow the other acts evidence was a proper exercise of discretion under *State v. Davidson*, 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606,[2] and we reject Veach's other challenges to this evidence. However, we conclude *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998), com-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] *State v. Davidson*, 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, reversing *State v. Davidson*, 222 Wis. 2d 233, 589 N.W.2d 38 (Ct. App. 1998), and *State v. Hammer*, 2000 WI 92, 236 Wis. 2d 686, 613 N.W.2d 629, were decided after the initial briefing was complete, and the parties addressed these cases in supplemental briefs.

pels the conclusion that Veach was denied effective assistance of counsel. We therefore reverse.

## BACKGROUND

¶ 2. The complaint arose out of two incidents that occurred during the summer of 1994 at a campsite where Veach was staying with his girlfriend and others, including Rebecca L., the seven-year-old god-daughter of his girlfriend. The complaint alleged that on one occasion when he and Rebecca were lying in a hammock together, he rubbed his hand under her clothing on her vaginal area; on another occasion when she spent the night in his van at the campsite, he rubbed his hand under her clothing on her vaginal area and buttocks.

¶ 3. In his statement to the investigating officer, Veach acknowledged that Rebecca got into the hammock with him, but denied touching her inappropriately. He acknowledged she stayed over-night in his van because it was cold, but said no contact occurred other than that he rubbed "her back and her legs and everything else through the sleeping bag" to try to warm her up because she said she was cold.

¶ 4. The State moved for an order declaring the admissibility of evidence relating to Veach's daughter, who was nine years old in 1983, when the prior acts took place. The proffered evidence included a signed statement by Veach's daughter dated September 17, 1987, and a signed statement by Veach dated October 3, 1987. In Veach's statement he admitted that on one occasion, about six months before he left the household, he had sexual contact with his daughter. He took her clothes off, he touched her in "the wrong places," he exposed himself to her, and he ejaculated on her stomach. When told his daughter had said there were six or

403

seven incidents of sexual contact, he said it was possible, but he only remembered this one; when told that his daughter had described an incident in which he put his penis in her mouth, he said he did not recall it. Veach pleaded guilty to one count of first-degree sexual assault and a judgment of conviction was entered on April 11, 1988.[3]

¶ 5. The State offered the evidence concerning his daughter to prove that Veach touched the vaginal area and buttocks of Rebecca intentionally and with the motive of sexual gratification and to prove absence of mistake. Defense counsel objected to the admission of this evidence, arguing that its probative value was weak because the prior conduct took place six years before the charged incidents, the conduct was incestuous, it took place at home, it involved threats to the victim, as well as grooming, enticement, invasive activity, and evidence of arousal, none of which occurred in the charged incidents concerning Rebecca. Defense counsel also argued that any probative value was outweighed by unfair prejudice.

¶ 6. The court decided to admit the evidence "barring surprises in the testimony that would change the picture." The court reasoned that, because Veach's defense was that any touching of Rebecca that occurred was not done with a sexual motive, the proffered evidence was probative on the issue of motive. The court also stated that mistake or accident was an issue. In the court's view, the probative value of the evidence was considerable, because the presence or absence of a sexual motive for the touching of Rebecca was the central issue in this case, and the similarities between the charged incidents and the conduct with his daughter

---

[3] Sentence was withheld and Veach was placed on probation for five years.

were significant given the age of the girls and the nature of his relationship to each. The court concluded that the evidence of Veach's conduct with his daughter was extremely prejudicial, but not unfairly so, because it went directly to the issue the jury had to decide.

¶ 7. The morning of trial the prosecutor asked for a clarification of the scope of the court's ruling on the other acts evidence, stating he intended to offer a certified copy of the judgment of conviction and the testimony of the detective who took the statement from Veach. Defense counsel objected to any evidence concerning the prior acts if Veach's daughter did not testify, because Veach would have no opportunity to cross-examine her and make distinctions between the prior acts and the charged incidents. The prosecutor explained he did not intend to offer the victim's statement through the detective's testimony, acknowledging that would be subject to hearsay and confrontation objections. The court stated the scope of its ruling on other acts evidence included any admissible evidence of Veach's sexual conduct with his daughter. It held that a certified copy of the judgment of conviction and the detective's testimony of Veach's statement to him were both admissible; it rejected defense counsel's argument that the former did not provide enough information to be probative of motive, and his argument that if the former were admitted, the latter should be excluded as cumulative.

¶ 8. The evidence at trial established that Veach and his girlfriend were friends of Rebecca's family for a number of years and they often went camping together. Veach and Rebecca had a close relationship. Veach's girlfriend agreed that "[Rebecca] kind of viewed him like either a close uncle or maybe even a father on occasion."

¶ 9. The evidence of the two charged incidents consisted of the statement Veach gave to the officer investigating this case and the trial testimony of Rebecca and Veach. Rebecca testified that in July of 1994, at night, Veach was resting in a hammock at his campsite and invited her to join him. She climbed in and lay down on his stomach. He put his hand inside her underwear and rubbed her vaginal area.[4] Veach testified Rebecca got in the hammock with him quite often, but he denied she ever lay on his stomach and denied he ever touched her inappropriately.

¶ 10. With respect to the van incident, Rebecca testified she and Veach were sleeping in his van later that same summer. She was lying on her stomach and he unzipped her sleeping bag and, with his hand under her clothes, rubbed her back and her butt; then put his hand underneath her on her stomach and rubbed her vaginal area. Veach testified that after he had carried Rebecca to the bathroom that night and she crawled back in her sleeping bag, she said she was cold and asked if she could cuddle up next to him. He said no, but he did rub her arms and back through the sleeping bag to try to warm her up and he described doing this "in a fatherly way." On cross-examination he explained that by saying "and everything else" to the investigating officer, he meant "her leg or arm or feet." He denied touching her inappropriately in any way.

¶ 11. The evidence of the other acts presented by the State consisted of the certified copy of the judgment of conviction; the testimony of Detective Christ Tzakais, the officer to whom Veach gave his October 3, 1987 statement; and Veach's trial testimony of the incident he had described in that statement.

---

[4] "Vaginal area" is not the term Rebecca used but the testimony established this is what she meant.

¶ 12. When Detective Tzakais began his description of the investigation, this interchange occurred:

Q Can you describe for us what it was that led you to become involved with the investigation?

A On September 16th of '87 [his daughter] and her mother came into the sheriff's department quite distraught about something that was going on—

MR. CARNS: (Interposing) Objection on hearsay grounds as to what other folks have told Detective Tzakais.

THE COURT: Overruled. I'll permit some latitude by way of preliminary questions. As we get into it, we need to be attentive to the hearsay problem.

After the detective described Veach's statement of the one incident with his daughter, this interchange occurred:

A. . . . I asked him if he could recall another incident where [his daughter] described him having her give him a blow job and he indicated he did not recall that. However, he indicated that it could have happened. He was also confronted and asked if he recalled the other six incidents that—

MR. CARNS: (Interposing) Objection. Maybe we should hear this outside the presence of the jury.

THE COURT: For the present time I would ask the officer to respond to questions from the District Attorney.

MR. CARNS: My objection would go to the fact that we are also going to introduce a judgment of conviction which shows one conviction and not a series of events.

THE COURT: I would overrule that objection.

Shortly thereafter, in response to the prosecutor's question of whether Detective Tzakais had asked Veach if Veach "had been involved in similar behavior with [his daughter]," the detective testified:

> A. I asked him if there were six other incidents and he indicated that he didn't recall them. However, they in fact could have happened and the fact that the indicent [sic] he described was the first incident and there was six months after that incident before he left the home because he was having sexual contact with [his daughter], was my concern.

On cross-examination Veach asserted there was only one incident with his daughter. However, he acknowledged that when told by Detective Tzakais that his daughter said there were six or seven incidents, he responded that it could have been he did not recall it, but it could have happened. Veach also denied that an incident in which he had his daughter suck his penis could have happened. However, he acknowledged he could have told the detective he did not recall it, but it could have happened.

¶ 13. The jury was instructed it could consider the evidence that Veach "engaged in sexual wrongdoing with his daughter" if it found that conduct did occur, but only on the "issues of motive, intent, and absence of mistake or accident."

¶ 14. After the jury returned a guilty verdict on both charges, Veach moved for a new trial on the ground his trial counsel was ineffective for failing to stipulate Rebecca was under thirteen and that the acts alleged in the complaint were for the purpose of sexual gratification, thereby preventing the admission of the other acts evidence under *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996), and *DeKeyser*.

408

In *Wallerman,* we held that when a defendant wishes to concede an element of the charged crime that the state proposes to prove through other acts evidence, the trial court may relieve the state of the duty to prove that particular element after applying the methodology we established. *Wallerman,* 203 Wis. 3d at 167–68.[5] In *DeKeyser,* we concluded that an attorney's failure to know and apply *Wallerman* was deficient performance and prejudiced the outcome of the trial, thereby constituting ineffective assistance of counsel. *DeKeyser,* 221 Wis. 2d at 443.

¶ 15. At the *Machner*[6] hearing, trial counsel testified that Veach's defense was that he did not touch Rebecca's vaginal area or buttocks, either in the hammock or in the van; the theory was not that Veach may have touched her there by mistake. Counsel testified he did not know about the possibility of a *Wallerman* stipulation; had he known about it, he would have considered this possibility and discussed it with Veach. However, he is not sure what decision he and Veach would have reached, because, although the other acts evidence was damaging, he also saw problems with Veach saying to the jury, in effect, "[I] absolutely did not touch this little girl on two occasions, but if I had

---

[5] We established these guidelines: (1) the court needs to determine exactly what the defendant is conceding; (2) the court needs to assess the State's evidence and determine whether the other acts evidence would still be necessary even with the concession; (3) the trial court should personally voir dire the lawyers and the defendant to ensure they each understand the effects of the concession; and (4) these concessions should be addressed pretrial if possible. *State v. Wallerman,* 203 Wis. 2d 158, 167–68, 552 N.W.2d 128 (Ct. App. 1996).

[6] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

touched her on two occasions, it was for sexual gratification." Veach testified that at the time of trial he had no reason to dispute Rebecca was under age thirteen and he would have been willing to stipulate to that. He also said that at the time of trial he had no reason to dispute that the touching Rebecca alleged was done for purposes of sexual gratification and he would have been willing to stipulate to that to keep out the other acts evidence.

¶ 16. The trial court denied the postconviction motion. The court concluded that any deficiency by counsel in not knowing about the possibility of a *Wallerman* stipulation was not prejudicial because the court would not have accepted a stipulation had it been offered. The court distinguished the fact situation in *Wallerman* because there the defense was that the defendant was wrongly identified as the person who assaulted the victim, and because the defendant was not present but was somewhere else at the time when, according to the victim, he touched her over her clothing between her legs. In the trial court's view, the analysis in *DeKeyser* was that mistake cannot be an issue if the defense is that the defendant was not present. In contrast, the court pointed out, Veach was present, there was evidence that there was physical contact between him and Rebecca, both in the hammock and in the van, and there was an issue as to the interpretation and intent of the testimony. The court viewed the proposed stipulation as inconsistent with Veach's defense, because Veach maintained that the touching that occurred was not for a sexual purpose, but he would be stipulating that it was. The court viewed this stipulation as impermissible under the methodology we established in *Wallerman*.

## DISCUSSION

### Admissibility of Other Acts Evidence

¶ 17. The three-step analysis for determining whether prior acts of a defendant are admissible asks: (1) Is the other acts evidence offered for an acceptable purpose under WIS. STAT. RULE 904.04(2)?[7] (2) Is the other acts evidence relevant under WIS. STAT. RULE 904.01? (3) Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice, confusion, or delay under WIS. STAT. RULE 904.03? *State v. Sullivan*, 216 Wis. 2d 768, 783–90, 576 N.W.2d 30 (1998) (footnote added).

¶ 18. In sexual assault cases, especially those involving assaults against children, the "greater latitude rule" is applied to the entire *Sullivan* analysis, with the effect of "permit[ting] the more liberal admission of other crimes evidence in sex crime cases in which the victim is a child." *Davidson*, 2000 WI 91 at ¶ 51. However, the greater latitude rule does not relieve a court from the duty to ensure the evidence is admissible under each of the three steps of the *Sullivan* analysis. *Id.*

¶ 19. Because the admission of other acts evidence is committed to the trial court's discretion, we

---

[7] WISCONSIN STAT. § 904.04(2) provides:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

411

affirm the decision on appeal if the trial court reviewed the relevant facts, applied a proper standard of law, and, using a rational process, reached a reasonable conclusion. *Id.* at ¶ 53.

■

¶ 20. Veach contends the trial court erred in its application of the *Sullivan* analysis at steps two and three. Applying the greater latitude rule and the reasoning of the court in *Davidson*, we conclude the trial court properly exercised its discretion in concluding that evidence of Veach's prior sexual acts with his daughter was relevant and that the probative value was not substantially outweighed by the danger of unfair prejudice.

■

¶ 21. Relevance under WIS. STAT. § 904.01—that is, the second step of the *Sullivan* analysis—has two components: the evidence must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence. *Sullivan*, 216 Wis. 2d at 772. Since Veach was charged under WIS. STAT. § 948.02(1) with having sexual contact with a person under the age of thirteen, the State had to prove these elements, in addition to proof of Rebecca's age: (1) Veach touched Rebecca on her intimate parts, either directly or through clothing; (2) he intentionally touched her there; and (3) he touched her there for the purpose of Veach's sexual gratification. WIS. STAT. § 948.01(5)(a). We agree with Veach that in this case intent and absence of mistake or accident are essentially the same and go to the same element: whether he intentionally touched Rebecca's intimate parts rather than touched them by mistake or accident. *See State v. Hammer*, 2000 WI 92, ¶¶ 27–28. We will

refer to this element as absence of mistake. We also agree with Veach that motive in this case goes to the element of the purpose of the sexual contact. *See id.* at ¶ 27.

¶ 22. Veach contends that, while motive was arguably a fact of consequence to the determination of this action, absence of mistake was not a fact of consequence because Veach's defense was that he did not touch Rebecca on her intimate parts and, therefore, absence of mistake was not an issue in this case. Veach relies on our decision in *DeKeyser* to support his position.

¶ 23. In *DeKeyser*, the issue was whether counsel was ineffective for failing to concede his granddaughter's age and failing to concede that the alleged act was for the purpose of sexual gratification in order to avoid the introduction of other acts evidence. In the context of applying the second step of the *Wallerman* methodology to determine whether the trial court could have properly accepted such a stipulation, we considered whether the other acts evidence was admissible to prove any point other than the elements of sexual gratification and age to which the defendant proposed to stipulate. *DeKeyser*, 221 Wis. 2d at 445–46. We concluded that the other acts evidence was not relevant to the issue of identity because the defendant never contended his granddaughter might have wrongly accused him of sexual contact perpetrated by another. We then stated:

> For similar reasons, the use of the other acts to establish the absence of mistake was irrelevant. In order to be relevant for this purpose, the defendant must first assert the defense of mistake or accident. In the present case, this defense was not used. DeKeyser's sole trial strategy was to vehemently

deny his presence at the time of the contact, an argument that is incompatible with a defense of mistake.

*Id.* at 447.

¶ 24. Veach relies on this reasoning and argues it is not affected by the supreme court's recent decision in *Davidson.* We disagree.

¶ 25. In *Davidson,* the court applied the second step of the *Sullivan* analysis to determine whether other acts evidence was relevant to prove the defendant touched the breast and vagina of a thirteen-year-old girl who was sleeping in the same camper. The defense was that the defendant did not do these acts. The defendant presented evidence suggesting that it was unlikely these events could have occurred in the small confines of a camper with others present, and evidence of hostility between the girl's family and his family. The trial court admitted evidence that the defendant had been convicted of sexually assaulting a six-year-old girl nine years before the charged incident. That assault took place when the defendant put his hands inside the underwear of the girl while she was drinking at a water fountain in a church during services. The trial court allowed the jury to consider this evidence on the "issue(s) of motive, that is, whether the defendant has a reason to desire the result of the crime, and plan or scheme, that is, whether such other conduct of the defendant was part of a design or scheme that led to the commission of the offense charged." *Davidson,* 2000 WI 91 at ¶ 25.

¶ 26. After deciding these were both proper purposes under WIS. STAT. § 904.04(2), the supreme court concluded that the motive for touching the thirteen-year-old girl as alleged was an element of the crime charged, and the prior assault related to that conse-

414

quential fact, as well as to the consequential fact of the opportunity or plan to commit a sexual assault in such an unlikely place. *Davidson*, 2000 WI 91 at ¶¶ 65–66. The court rejected the argument that the defendant's denial that the sexual touching occurred should alter this conclusion:

> As already discussed, the defendant's motive for touching Tina H. was an element of the charged crime, and the Cindy P. assault related to that consequential fact. Under our prior cases, the fact that the defendant denied sexually assaulting Tina H. does not change this conclusion. 'The state must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements. . . . Evidence relevant to motive is therefore admissible, whether or not defendant disputes motive.' *Plymesser*, 172 Wis. 2d at 594–95 (citing *Friedrich*, 135 Wis. 2d at 22, *Fishnick*, 127 Wis. 2d at 260–61; and *Mink*, 146 Wis. 2d at 15). *See also State v. Hammer*, 2000 WI 92, ¶ 25, 236 Wis. 2d 686, 613 N.W.2d 629 ("If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element.").

*Id.* at ¶ 65.
■

¶ 27. We read this portion of *Davidson* to hold that, for purposes of the second step of the *Sullivan* analysis, consequential facts are determined with reference to the elements of the crime the State must prove and are not limited to the elements the defendant is challenging in his or her defense. We conclude this holding conflicts with our reasoning in *DeKeyser* that a defense based on a denial that the defendant was present limits the consequential facts for purposes of the second step of the *Sullivan* analysis. We must

415

therefore follow *Davidson*, not *DeKeyser*, on this point. *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 238, 552 N.W.2d 440 (Ct. App. 1996) (when a court of appeals decision conflicts with a supreme court decision, we must follow the latter).

¶ 28. The State had to prove Veach intentionally touched Rebecca's intimate parts rather than accidentally touched them while lying in the hammock with her or rubbing her in the van to get her warm, even though Veach denied he touched her intimate parts at all. Following *Davidson*, we conclude the trial court properly exercised its discretion in deciding that the evidence of Veach's prior conduct with his daughter is related to the consequential fact of absence of mistake in the touching of Rebecca's intimate parts.

¶ 29. Turning to the requirement that the other acts evidence must have some tendency to make the consequential fact more or less probable, Veach argues that the prior conduct is too dissimilar from the charged acts to have any probative value—on the issue of either motive or absence of mistake. As Veach correctly points out, the measure of "probative value lies in the similarity between the other act and the charged offense." *Sullivan*, 216 Wis. 2d at 786. Veach contends the only similarities are that both girls were preadolescent and he was in a position of trust with respect to both. The differences, he asserts, are many: the acts with his daughter were incestuous; those acts went far beyond the brief rubbing of the vaginal area and buttocks Rebecca described and were intrusive and aggressive; he threatened his daughter and did not threaten Rebecca; he took off his daughter's clothes, but Rebecca remained fully clothed; the locations were different; and the incidents were eleven years apart.

¶ 30. The trial court was cognizant of these distinctions, but assessed them differently than Veach. The court stated that incest was involved because "the daughter was the daughter," but the court viewed as more significant the fact that Veach's daughter was a young child at the time, just as Rebecca was. The court noted there were some differences in the acts involved, but saw that as having more to do with the "reaction of the parties and the facts and circumstances being a little different"; and not negating the essential similarity of the conduct. Ultimately, the court considered the fact that both girls were young children and both the prior acts and the charged acts demonstrated a sexual interest in girls of that age as not simply "mildly probative," but as "considerably probative."

■■

¶ 31. The court engaged in a rational analysis of the relevant facts using the correct legal standard and the result was reasonable. Even with the time interval between the prior acts and the charged incidents, the prior acts may have probative value if they are sufficiently similar to the charged incidents. *Hammer*, 2000 WI 92 at ¶ 33. Although the conduct with Veach's daughter involved more intrusive and aggressive acts, that does not lessen the probative value of the evidence on the issues of motive or absence of mistake. Given the greater latitude rule, a reasonable judge could decide that the similarities of the ages of the girls, Veach's position of trust with each, and the indisputably sexual nature of the conduct with his daughter make the prior acts probative on the issues of motive and absence of mistake, notwithstanding the time interval and the differences between the prior acts and the charged incidents.

¶ 32. Veach also challenges the trial court's conclusion that the probative value of the prior conduct substantially outweighed the danger of unfair prejudice. Although we acknowledge this is a close question and reasonable judges might come to different conclusions on the third step of the *Sullivan* analysis in this case, we are persuaded, given the greater latitude rule, that the trial court properly exercised its discretion on this point as well.

¶ 33. We agree with Veach that his conduct with his daughter, both the incident he admitted to and the oral sex incident, are much more egregious than the conduct Rebecca accused him of. The trial court recognized this, describing the evidence of the prior acts as "extremely prejudicial." However, it concluded this prejudice was not unfair because the evidence was probative on central elements of the offense: motive and absence of mistake.

■

¶ 34. Unfair prejudice occurs when the proffered evidence "has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789–90. Thus, as the trial court recognized, it would not be unfairly prejudicial if the jury were to use the evidence of the prior acts to decide Veach intended to touch Rebecca's intimate parts and had a sexual motive in doing so. The possibility that the other acts evidence would be used by the jury for other and impermissible purposes was limited by the cautionary instruction. *Davidson*, 2000 WI 91 at ¶ 78. In addition, Veach's statement describ-

ing the prior incident he admitted to and the description of the oral sex incident were brief and were not presented through testimony of his daughter, thus minimizing the danger of arousing the jury's sympathies or horrors over those incidents. *Id.* (evidence admitted through stipulation rather than testimony minimizes danger of arousing jury's sympathy or horror over prior assault).

*Other Challenges to Admissibility*

¶ 35. Veach asserts two additional and separate grounds for challenging Detective Tzakais's testimony on the six other incidents with Veach's daughter and the oral sex incident. First, he contends this was inadmissible hearsay because it was based on statements of his daughter. We agree with the State that this objection was not properly preserved for appellate review.

¶ 36. Defense counsel's first objection was to Detective Tzakais testifying on what Veach's daughter and mother told him. No reference to what Veach's daughter specifically told him came in through the preliminary testimony that the court said it would allow in response to that objection. Detective Tzakais referred to the six other incidents and the oral sex incident in recounting his questions to Veach and Veach's answers to him. Defense counsel's objection at this point was based on "the fact that [he was] also going to introduce a judgment of conviction which shows one conviction and not a series of events." The court overruled this objection, and Detective Tzakais testified as we have discussed above.

¶ 37. An objection to the admission of evidence must state the ground of the objection in a manner that

is sufficient for the trial court to understand the ground. *State v. Agnello*, 226 Wis. 2d 164, 174, 593 N.W.2d 427 (1999). Defense counsel did state a ground for his objection to the detective's testimony relating to what he had asked Veach and what Veach had answered on these points, but the ground was not hearsay, nor was it sufficient to alert the court to the fact that he was making an objection based on hearsay. We do not agree with Veach that defense counsel was cut off by the court and was prevented thereby from stating the basis for his objection. After the court indicated it was not going to hear the basis for the objection outside the presence of the jury, defense counsel stated the basis for the objection.

¶ 38. Veach also argues that the evidence of the six other incidents and the oral sex incident was not sufficient to permit a reasonable jury to find by a preponderance of the evidence that those incidents occurred. Again, we conclude the stated basis for his objection—that the judgment of conviction did not cover a series of events—did not adequately alert the trial court to a challenge that Veach's responses to these questions did not permit a reasonable jury to find by a preponderance of the evidence that these incidents occurred.[8] We therefore conclude this objection, like

---

[8] It may be that defense counsel did not understand, when the prosecutor informed him the morning of trial that he intended to present evidence of the prior acts through the detective's testimony of Veach's statement, that the detective would refer to portions of Veach's statement beyond the one incident Veach admitted. However, when Detective Tzakais did so at trial, it was then incumbent upon defense counsel to state as a ground for objecting that Veach's responses to questions on the oral sex incident and six other incidents were not sufficient to

the hearsay objection, was not adequately preserved for appellate review.

*Ineffective Assistance of Counsel—Failure to Stipulate*

¶ 39. In order to prevail on a claim for ineffective assistance of counsel, Veach had the burden of proving trial counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice occurs when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

¶ 40. The trial court's determinations of what the attorney did and did not do and the basis for the challenged conduct are factual; we uphold these unless clearly erroneous. *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). The ultimate determinations of whether counsel's performance was deficient and prejudicial are questions of law, which this court reviews independently. *Id.* at 128.

permit a reasonable jury to decide those incidents occurred. The need for clearly stating this as a separate and independent basis for objection is not based on a mere formality. When a defendant objects to evidence of a prior act on the ground that it is not sufficient to permit a reasonable jury to conclude by a preponderance of the evidence that the defendant actually committed the prior act, the trial court is to decide as a matter of law whether a reasonable jury could so conclude; the court may not allow the evidence to be presented to the jury if the evidence is insufficient under this test. *See State v. Schindler*, 146 Wis. 2d 47, 54, 429 N.W.2d 110 (Ct. App. 1988).

¶ 41. Veach contends that under *DeKeyser* defense counsel was ineffective because he did not know about the possibility of a *Wallerman* stipulation and therefore did not propose one, and this deficiency was prejudicial. He asserts the trial court's conclusion that there was no prejudice because it would not have accepted such a stipulation rests on its erroneous view of the law and on its disagreement with *DeKeyser*. The State, at oral argument, acknowledged that *DeKeyser* is difficult to distinguish from this case, and it focused most of its argument on its disagreement with *DeKeyser*. The State's position is that prosecutors should not have to accept "conditional stipulations"—stipulations whereby the defendant asserts he or she did not commit a particular act, but concedes if he or she did, the purpose was sexual gratification. The State relies on *Old Chief v. United States*, 519 U.S. 172 (1997), and *United States v. Williams*, 238 F.3d 871 (7th Cir. 2001), in support of its argument that a defendant's offer to stipulate to particular elements of a crime does not render inadmissible the evidence of prior acts to prove that element.

¶ 42. The State's argument on the incorrectness of *DeKeyser* and *Wallerman* must be addressed to the supreme court. We are not at liberty to overrule, modify or withdraw language in our prior decisions. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). We are persuaded *DeKeyser* controls this case, and, following *DeKeyser*, we conclude trial counsel was ineffective.

¶ 43. It is undisputed that trial counsel did not know about the possibility of a stipulation and his failure to propose one was not due to any strategic decision. Veach testified unequivocally that he would have stipulated both that Rebecca was under thirteen

and that the touching she alleged of her buttocks and vaginal area, if it occurred, was done for purposes of sexual gratification. Following the analysis in *DeKeyser*, we therefore analyze whether the trial court would have had a basis for rejecting the proposed stipulations had they been made. This involves an application of the *Wallerman* factors. *DeKeyser*, 221 Wis. 2d 444. As in *DeKeyser*, the second step of the *Wallerman* methodology is at issue: whether the evidence of other acts would be admissible to prove any point not covered by the proposed stipulation.

¶ 44. Veach and the State agree that logically Veach's proposed stipulation to sexual gratification includes a concession that, if Veach did touch Rebecca on her buttocks and vaginal area, that touching was not unintentional, accidental, or by mistake: the act of touching Rebecca on the buttocks and vaginal area cannot logically be for the purpose of sexual gratification and also be done unintentionally, accidentally, or by mistake. Therefore, the question is whether the other acts evidence would have been admissible for any purpose other than motive (that is, the purpose of sexual gratification), intent or lack of mistake or accident. The State does not argue it was admissible for any other purpose; and we can discern no other permissible purpose.

¶ 45. The trial court did not undertake this analysis, but instead explained it would not have accepted the proposed stipulation for reasons we cannot reconcile with *DeKeyser*.[9] First, the fact that Veach admitted he was in a hammock with Rebecca and touched her

---

[9] The trial court also considered that *Wallerman* was distinguishable from this case because in that case the defense was mistaken identity; the defendant did not deny that an assault occurred. We need not decide whether the trial court could have

through the sleeping bag, although not on her intimate parts, does not make *DeKeyser* inapplicable. Those circumstances create a possibility of a defense of accidental sexual touching which is not available when, as in *DeKeyser*, the defendant claims he was not near the victim at the time she alleges the offense occurred. However, if Veach's proposed stipulation were accepted, Veach, as the State acknowledges, would be conceding lack of accident, and the jury would have been so instructed.

¶ 46. Second, the "inconsistency" the court observed between Veach's defense and the proposed stipulation also existed in *DeKeyser*. DeKeyser's defense was that he did not touch the victim on an intimate part as she asserted, and the proposed stipulation was that the act to which she testified was for the purpose of sexual gratification. The "inconsistency" that troubled the trial court is what the State refers to as a "conditional stipulation." But, as we have already explained, we cannot sustain the trial court's decision on this basis without overruling, modifying, or withdrawing language from *DeKeyser*, which we may not do.

¶ 47. Because we conclude that under *DeKeyser* there were no grounds on which the trial court could have properly admitted the other acts evidence if Veach had stipulated to Rebecca's age and to the motive of sexual gratification, we conclude defense counsel was deficient for failing to know about *Wallerman* and propose that stipulation. Although defense counsel suggested he did not know whether he would have proposed the stipulation had he known of the option, we are persuaded he would have performed

___

correctly distinguished *Wallerman* had we not decided *DeKeyser*.

deficiently had he known of the option and still not proposed the stipulation. The other acts in this case are, as we have already noted, much more intrusive, aggressive, and egregious than the conduct with which Veach is charged in this case. Defense counsel's vigorous arguments to the court in an effort to keep this evidence out show he was well aware of its damaging effect. With the proposed stipulation, Veach could have kept out this evidence and still asserted as a defense that he did not touch Rebecca on her intimate parts.

¶ 48. Turning to the issue of prejudice, we conclude Veach has established prejudice.[10] Once again, the prior acts with his daughter were much more intru-

_____

[10] Although we are using the term "prejudice" here, as we did in analyzing the admissibility of the other acts evidence, we are not using the same concept or the same standard of review. As we explained in the first section of this opinion, in deciding upon the admissibility of evidence, the trial court weighs the danger of "unfair prejudice" against the probative value of the evidence, and we review that balancing under a deferential standard. On the ineffective assistance of counsel claim, "prejudice" is defined as "probability sufficient to undermine our confidence in the outcome," *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and our review is de novo. These differences explain why it is not inconsistent to uphold the trial court's ruling on the admissibility of this evidence—when, as we have pointed out, the balancing of probative value against unfair prejudice is a close question—but to decide that there is a reasonable probability that the result would have been different had this evidence not been admitted.

We also observe that the State's argument on prejudice for the ineffective assistance claim is that, even if Veach had proposed the stipulation, the trial court could properly have rejected it. The State did not argue that, if the trial court had been obligated to accept the stipulation, *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998), Veach could not

sive, aggressive, and egregious than the charged acts. Veach's conduct with his daughter would likely be much more disturbing to a jury than the conduct Rebecca accused him of. It is evident from our reading of the record that the defense counsel, prosecutor, and court recognized this. It is also evident that the prosecutor and court considered the other acts evidence to be very important to the State's case. The outcome in this case depended entirely on whether the jury credited the testimony of Rebecca or Veach. Although the jury was instructed it could consider the other acts evidence only on the issues of motive, intent and absence of mistake or accident, we are not confident that evidence that Veach had a sexual desire for young girls did not influence the jury to believe Rebecca rather than Veach.[11] Indeed, in its supplemental brief the State asserts that the other acts evidence in child sexual assault cases is "independently probative of the critical issue of the child's credibility."

■■

¶ 49. Accordingly, we conclude that Veach was denied effective assistance of counsel and we therefore reverse his conviction.

---

show he was prejudiced by his trial counsel's failure to propose it.

[11] The instruction defined motive as "whether the defendant has a reason to desire the result of the crime" and "intent" and "absence of mistake" both as "whether the defendant acted with the state of mind that is required for this offense." The jury was also instructed not "to conclude that the defendant has a certain character or a certain character trait and . . . acted in conformity with that trait or character," nor to conclude "that the defendant is a bad person and for that reason is guilty of the offense charged."

*By the Court.*—Judgment and order reversed and cause remanded.

¶ 50. LUNDSTEN, J. *(dissenting).* Although I agree with much of the majority decision, I respectfully dissent because I disagree with its analysis of prejudice under *Strickland.*[1] Before proceeding to my point of disagreement, I will comment on some particular aspects of the majority decision with which I agree.

¶ 51. The majority correctly decides that it was deficient performance for Veach's trial counsel to fail to propose a "*Wallerman* stipulation."[2] The majority is also correct in its conclusion that the trial court would have been required to accept a *Wallerman* stipulation if one had been offered. Both of these conclusions are dictated by this court's prior decision in *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998). Regarding these issues, I see no principled way of distinguishing this case from *DeKeyser.*

¶ 52. I also agree with the majority's holding that *DeKeyser* is in conflict with the supreme court's subsequent decision in *State v. Davidson*, 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, with respect to its analysis of relevance. *See* Majority at ¶ 27. In *DeKeyser*, this court held that evidence of prior sexual assaults could not be used to show the absence of mistake or accident because the defendant had not affirmatively raised the defense of mistake or accident. *DeKeyser*, 221 Wis. 2d at 447. This holding is in conflict with *Davidson* for the reasons set forth by the majority. In addition, the holding in *DeKeyser* is flawed because it fails to

---

[1] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[2] *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996).

acknowledge that the facts of a case may themselves suggest that mistake or accident is an issue, regardless what a defendant affirmatively asserts or argues.

¶ 53. Despite these points of agreement and others, I must dissent because I do not believe that *DeKeyser* compels a finding of prejudice in this case under the second prong of *Strickland*. And, I do not believe that the *Strickland* standard of prejudice has been met.

¶ 54. The *DeKeyser* court's finding of prejudice rests on three grounds. The first is inapplicable here and the remaining two are in conflict with *Davidson*.

¶ 55. First, the *DeKeyser* court reasoned that the normal assumption that a limiting instruction is sufficient to cure possible unfair prejudice attending the admission of other acts evidence did not apply to the case before it because the jury had been instructed to consider the other acts evidence as proof of "preparation or plan, and thus the doing of the act." *DeKeyser*, 221 Wis. 2d at 452. Regardless of the ongoing validity of the limited view of preparation and plan set forth in *DeKeyser*,[3] the jury in this case was not instructed on preparation or plan.[4]

¶ 56. Second, the *DeKeyser* court found that it was error to instruct the jury that it could use the other

___

[3] *Cf. State v. Davidson*, 2000 WI 91, ¶¶ 60–62, ¶ 66, 236 Wis. 2d 537, 613 N.W.2d 606; *State v. Gray*, 225 Wis. 2d 39, 53, 590 N.W.2d 918 (1999).

[4] I also agree with Chief Judge Cane's criticism of this analysis. In his dissent in *DeKeyser*, Judge Cane observes that the majority's "suggestion that the jury may have improperly used this other acts evidence is contrary to the long-established principle that we must presume the jury will follow the court's instructions." *State v. DeKeyser*, 221 Wis. 2d 435, 457, 585 N.W.2d 668 (Ct. App. 1998) (Cane, C.J., dissenting).

acts evidence to show lack of mistake or accident when the defendant never alleged mistake or accident. *Id.* at 452–53. However, as demonstrated in the majority opinion in this case, that conclusion is in conflict with our supreme court's *Davidson* decision.

¶ 57. Third, the *DeKeyser* court observed that "all those involved in the trial recognized the potential use of this evidence as corroboration of the victim's allegation" and that the trial court admitted the evidence in part to "bolster" the State's case. *DeKeyser,* 221 Wis. 2d at 453. Later, the *DeKeyser* court said that the trial court had wrongly considered the other acts evidence "as corroboration of the victim's testimony." *Id.* at 454. The *DeKeyser* court's conclusion seems to be that the trial court used the corroborative value of the other acts evidence as an impermissible consideration when determining admissibility. This conclusion conflicts with *Davidson,* in which the supreme court repeatedly noted that the "need to corroborate the victim's testimony against credibility challenges" is one of the justifications for admission of this type of evidence in sexual assault cases. *Davidson,* 2000 WI 91 at ¶ 40; *see also id.* at ¶¶ 38, 66. Accordingly, the *DeKeyser* trial court's consideration of the corroborative value of the evidence was not a proper basis for finding prejudice under *Strickland.*

¶ 58. I acknowledge that the need-to-corroborate-the-victim justification for the greater latitude rule has been the subject of much dispute. *See, e.g., Davidson,* 2000 WI 91 at ¶¶ 107–10 (Bradley, J., dissenting). This dispute, however, is beside the point because this court is not generally at liberty to reject pronouncements of our state supreme court, and we are not at liberty to do so here.

¶ 59. Having determined that one part of the
*DeKeyser* prejudice analysis is absent in this case and
that the remaining two are in conflict with *Davidson*, I
now engage in my own analysis of prejudice under
*Strickland*. The often-stated standard is this:

> Prejudice occurs when counsel's deficient per-
> formance was "so serious as to deprive the
> defendant of a fair trial, a trial whose result is relia-
> ble." To demonstrate prejudice, a defendant must
> show a reasonable probability that, but for counsel's
> deficient performance, the result of the trial would
> have been different. A reasonable probability is one
> sufficient to undermine confidence in the outcome of
> the trial. *The ultimate focus of our inquiry must be
> on the fundamental fairness of the proceeding whose
> result is being challenged.*

*DeKeyser*, 221 Wis. 2d at 455–56 (Cane, C.J., dissent-
ing) (citations omitted; emphasis added). A defendant
does not demonstrate prejudice simply by showing that
there is a "reasonable probability" of a different result
if his or her counsel had not performed deficiently.
Such an analysis, "focusing solely on mere outcome
determination, without attention to whether the result
of the proceeding was fundamentally unfair or unrelia-
ble, is defective." *Lockhart v. Fretwell*, 506 U.S. 364,
369 (1993). Thus, the bottom-line prejudice inquiry
addresses whether the proceeding was fundamentally
fair, despite deficient performance.

¶ 60. I agree with the majority's observation that
prejudice under the second prong of *Strickland* is a
different concept than prejudice in the context of ana-
lyzing the admissibility of other acts evidence. *See*
Majority at n.10. Still, I conclude that admission of the
other acts evidence during Veach's trial did not
prejudice Veach within the meaning of *Strickland*,

because admission did not render his trial fundamentally unfair.

¶ 61. The trial in this case was unremarkable when compared with numerous published child sexual assault cases. Wisconsin has long followed the greater latitude rule which has led to the admission of evidence of prior sexual assaults carrying a significant danger of unfair prejudice. This court and the state supreme court have repeatedly affirmed convictions in these cases relying on both the need for such evidence and on faith that jurors would conscientiously follow limiting instructions. *E.g., State v. Plymesser*, 172 Wis. 2d 583, 493 N.W.2d 367 (1992) (in sexual assault case, other acts evidence showing the defendant had oral sex with a seven-year-old child); *State v. Friedrich*, 135 Wis. 2d 1, 398 N.W.2d 763 (1987) (in sexual assault case, other acts evidence showing the defendant previously assaulted two other young girls); *State v. Parr*, 182 Wis. 2d 349, 513 N.W.2d 647 (Ct. App. 1994) (in sexual assault case, other acts evidence showing the defendant previously assaulted three young boys); *cf. State v. Bustamante*, 201 Wis. 2d 562, 567–68, 549 N.W.2d 746 (Ct. App. 1996) (in shaken baby homicide case, other acts evidence that the defendant injured a different child by inflicting a skull fracture). The question in these prior cases was whether the trial court could properly have admitted the other acts evidence. Upon finding that the evidence was properly admitted, this court and the supreme court affirmed the convictions because the trials were fairly conducted according to our rules of evidence and within the bounds of constitutional constraints.

¶ 62. Likewise, in this case the majority has found that the trial court could have properly admitted the other acts evidence. Prior to *Wallerman* and

*DeKeyser*, that finding would have been the end of the matter and we would have affirmed Veach's convictions. However, the majority holds, in effect, that Veach's trial was fundamentally unfair because admissible other acts evidence was presented to the jury.

¶ 63. I will not take issue here with *Wallerman* and *DeKeyser* because this court is bound by those decisions, but the advent of this new law recognizing the propriety of *Wallerman* stipulations does not mean that prior cases tried in compliance with the "greater latitude" rule and other principles governing the admission of other acts evidence were, in retrospect, fundamentally unfair. It follows that the trial here was not fundamentally unfair just because a *Wallerman* stipulation could have provided an alternative means of satisfying the State's burden of proof.

¶ 64. Therefore, I would affirm Veach's convictions.