COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No.    **2022AP516-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CF78**

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

BRUCE E. SMITH,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Monroe County: TODD L. ZIEGLER, Judge. *Affirmed*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Following a jury trial in Monroe County circuit court, Bruce Smith appeals a judgment convicting him of first degree sexual assault

of a child and incest through sexual contact with the same child. Smith argues that the convictions must be reversed because the circuit court erroneously exercised its discretion in admitting at trial three sets of other-acts evidence. In the alternative, he argues that this court should order a new trial because the real controversy was not fully tried in light of the admission of the other-acts evidence. Regarding admission of two sets of other-acts evidence, we conclude that the circuit court did not erroneously exercise its discretion. As to the remaining set, we assume without deciding that the decision to admit was error, but we conclude that the assumed error was harmless. For these reasons, reversal in the interest of justice is not required. Accordingly, we affirm.

## BACKGROUND

¶2    In February 2019, the State filed a criminal complaint charging Smith with having sexual contact with his niece, whom we identify as A.B.[1] The complaint alleged that this occurred sometime between August 15, 1990, and August 15, 1992, when she was between the ages of 7 and 9. According to the criminal complaint, A.B. told a police detective in November 2018 that approximately 27 years earlier, when she was in second or third grade, Smith had sexual contact with her. More specifically, she said that Smith rubbed her genitals and asked her, "[D]oes it feel good[?]" She said that this occurred in the bedroom she then shared with her younger sister in their residence in Monroe County while Smith was babysitting.

---

[1]  We refer to victims and witnesses in this case by initials different from their own in order to protect their privacy. *See* WIS. STAT. RULE 809.86(4) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3      The prosecution's amended information charged Smith with having sexual contact with A.B. sometime between January 1, 1990, and December 31, 1992, in violation of WIS. STAT. § 948.02(1), and incest with A.B. through sexual contact during the same period, in violation of WIS. STAT. § 948.06(1).

¶4      The prosecution filed a pretrial motion for the admission at trial of three sets of other-acts evidence under governing law that includes WIS. STAT. § 904.04(2). As an evidentiary basis for all three sets, the prosecution relied on allegations contained in the criminal complaint, which quoted from interviews conducted by a police detective. In discussion below we summarize the details regarding the pre-trial offers of proof by the prosecution and the related testimony at trial regarding each set of allegations.

¶5      The prosecution argued that each of these alleged incidents was admissible as a "sexually motivated act[]" by Smith that he "directed towards the same minor child," namely, A.B.'s older brother. We identify the brother as C.D. The prosecution contended that witness's accounts of these incidents were offered for the permissible purposes of: proving that, in allegedly having contact with A.B.'s genitals on the charged occasion, Smith intended to humiliate or gain sexual gratification from the victim; proving the "lack of mistake or accident"; and also to "present[] the full story to [the] jury" regarding the A.B. incident. Defense counsel countered that the witness's accounts of the three alleged incidents amounted to mere expressions of "amorphous feelings" and not concrete "observations" of fact. Counsel said the allegations were so vague that his "concern is really kind of through the roof on how these observations were ever even made; the inability to cross-examine beliefs, feelings, as opposed to something [the witness] can see and hear and testify to."

3

¶6      The circuit court ruled that all three alleged incidents were admissible under the three prongs of the *Sullivan* analysis, particularly in light of "the greater latitude rule." *See State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998); *State v. Marinez*, 2011 WI 12, ¶¶16, 20, 28, 34, 331 Wis. 2d 568, 797 N.W.2d 399 (explaining and applying the greater latitude rule, which allows for more ample admission of other-acts evidence in child sexual assault cases). But the court's ruling was preliminary; the court said that defense counsel had brought up "well-noted" "issues" and the court indicated that, before or during trial, the court might entertain "objections to certain statements" by the witnesses to the other acts.

¶7      At trial, A.B. testified to the conduct underlying the charged offenses. Among other details, she specifically testified that Smith touched her genitals in her bedroom when she was in third, fourth, or fifth grade; that it was "very painful" and she felt "frozen"; and that Smith asked her "if it felt good." A.B.'s mother, father, and aunt testified that they were aware of her allegations in the early 1990s. Smith did not testify at trial.

¶8      The prosecution elicited testimony regarding the three alleged other-acts evidence incidents, as summarized in discussion below. Neither side now calls our attention to further pertinent discussion among the parties and the circuit court during the course of trial regarding the admissibility of other-acts evidence.

¶9      The circuit court gave a cautionary instruction regarding two of the three sets of other-acts evidence as part of its final set of instructions to the jury toward the close of trial, quoted in the discussion below.

¶10     The jury reached guilty verdicts on both charges, the circuit court sentenced Smith, and he now appeals the judgment of conviction.

## DISCUSSION

¶11 We first summarize the basic applicable legal standards regarding other-acts evidence and then address the incidents in turn, adding some background facts and legal standards as needed.

### I. Other-Acts Evidence

¶12 We review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion, upholding the decision as long as the court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a reasonable conclusion. *State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174.

¶13 Evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). Such evidence may be admissible, however, when offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶14 As referenced above, our supreme court in *Sullivan* set forth a three-part test for determining whether other-acts evidence is admissible. *Sullivan*, 216 Wis. 2d at 772-73. A court must consider whether: (1) the other-acts evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2); (2) the evidence is relevant under WIS. STAT. § 904.01; and (3) its probative value is substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73. The proponent of the evidence must show the permissible purpose and relevance prongs of the *Sullivan* test; the opponent bears the burden to establish unfair prejudice. *Marinez*, 331 Wis. 2d 568, ¶19.

¶15 Other-acts evidence may be "particularly relevant in child sexual assault cases because an average juror likely presumes that a defendant is incapable of" committing child sexual assault. *Hurley*, 361 Wis. 2d 529, ¶59. This means that courts are to permit a "'greater latitude of proof as to other like occurrences'" in cases involving child sexual assault. *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (quoted source omitted). The greater latitude rule has been codified in Wis. Stat. § 904.04(2)(b)1., which states that in a sexual assault case "evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." The greater latitude rule applies to each step of the *Sullivan* analysis. *Hurley*, 361 Wis. 2d 529, ¶59.

## II.    The North Dakota Incident

### A. Additional Background

¶16 The following was the factual basis for the circuit court's pretrial ruling regarding one set of other-acts evidence, which we refer to as the North Dakota incident. A.B.'s brother C.D. was quoted in the criminal complaint as telling police the following. In 1986 or 1987—when A.B. was 3 or 4 and C.D. was 6 or 7—the two children and their parents were living in North Dakota. At one point during a visit to the family, Smith was with the two children in C.D.'s bedroom. C.D. and A.B. were naked. A.B. was lying on a bed. C.D. could not recall if Smith was also naked. "[I]t seems like there was probably some rubbing going on. I don't know if [Smith] was pleasuring himself." C.D. "doesn't remember what happened in his room that day, but only remembers [Smith] in the room with [C.D.] and [A.B.] lying naked in the bed." "I remember feeling that this wasn't right. I don't like this."

¶17    At trial, the prosecution elicited the following trial testimony from C.D. Smith visited C.D.'s family when they were living in North Dakota and C.D. was 6 or 7. At one point during the visit Smith was with C.D. and A.B. in C.D.'s bedroom. C.D. could not be "a hundred percent sure I was unclothed," but he testified to a clear memory that A.B. was lying "in the bed" while completely naked. C.D. was also "in the bed." C.D. did not recall whether Smith was clothed or not. "I absolutely felt … that it was inappropriate."[2]

### B. Analysis

¶18    We conclude that the State has carried its burden of showing that the testimony regarding the North Dakota incident was offered for the permissible purpose of making a showing, which was relevant, that in touching A.B.'s genitals as charged Smith had "the purpose of sexually degrading or sexually humiliating [A.B.] or sexually arousing or gratifying [Smith]." *See* WIS. STAT. § 948.01(5)(a) (part of the definition of "sexual contact"). We also conclude that Smith fails to carry his burden of showing that the probative value of the North Dakota incident was substantially outweighed by the danger of unfair prejudice resulting from its admission.

¶19    Regarding the first step of the *Sullivan* test, proper purpose, Smith does not dispute, because he cannot, that the prosecution at trial was required to prove that he touched A.B.'s genitals "for the purpose of sexually degrading or sexually humiliating [A.B.] or sexually arousing or gratifying [Smith]." *See* WIS.

---

[2] We note that C.D.'s trial testimony regarding the North Dakota incident did not include the following allegations from the criminal complaint that formed the basis of the pretrial motion: "[I]t seems like there was probably some rubbing going on. I don't know if [Smith] was pleasuring himself." However, Smith does not develop an argument that this difference undermines the circuit court's decision to admit evidence of the North Dakota incident and we conclude that it does not undermine the decision.

STAT. § 948.01(5)(a). Accordingly, the prosecution offered evidence of the North Dakota incident to show that Smith's intent in touching A.B.'s genitals on the charged occasion was for one of these purposes. *See Davidson*, 236 Wis. 2d 537, ¶¶59, 65 (defendant's "purpose or motive for allegedly touching [a child] was one element of the charged crime, and evidence relevant to motive was therefore admissible"; previous sexual contact with young children relevant to show that he had sexual contact with a child on the charged occasion for the purpose or with the motive of sexually arousing or gratifying himself); *State v. Friedrich*, 135 Wis. 2d 1, 22, 398 N.W.2d 763 (1987).

¶20     Turning to the second step of the *Sullivan* test, relevancy, Smith argues that this evidence was not relevant because it did "nothing to show that Smith's alleged 'behavior' was sexual or motivated by sexual gratification" and failed to show that Smith "ever engaged in *any* inappropriate sexual behavior." (Emphasis in briefing.)  We disagree.

¶21     The circuit court could reasonably determine that the following evidence could help to demonstrate that, at the time of the charged offense, Smith had an intent to sexually degrade or humiliate or become sexually aroused or gratified:  when C.D. was 6 or 7 and A.B. was 3 or 4, the children were in a bedroom with only Smith; C.D. and A.B. were in a bed; one or both children were completely naked; and at the time C.D. thought the circumstances were inappropriate.  It is true that this does not describe an act of sexual contact by Smith.  It does, however, describe circumstances in which Smith might have been trying to observe one or more naked children for sexual purposes or to have contact with naked children for sexual purposes.  There are certainly possible innocent explanations for an adult to be alone in a room with naked young relatives, with the children in a bed.  Further, of course, one of the children could later recall thinking that, at the time, the

circumstances were inappropriate, even if they were not inappropriate. But there are also explanations for these allegations that would help to show a sexual intent at the time of the charged offense.

¶22    Further, we note that, while the North Dakota incident was distant in time from the time of trial in this case, it was not distant in time from Smith's assault on A.B. Its probative value to show a sexual intent at the time of the assault on A.B. may not be strong, but it is meaningful.

¶23    Beyond that, the testimony was that A.B., the victim in the charged incident, was naked, not only that C.D. may have been naked.

¶24    It is not clear but Smith might intend to argue that the jury lacked sufficient evidence to find that what C.D. testified to actually occurred. Our supreme court has explained this part of the relevancy prong as follows:

> [O]ther acts evidence may consist of uncharged offenses …. However, "[u]nder [WIS. STAT. § 904.04(2)], other acts evidence is relevant if a reasonable jury could find by a preponderance of the evidence that the defendant committed the other act." *State v. Bustamante*, 201 Wis. 2d 562, 570, 549 N.W.2d 746 (Ct. App. 1996) (citing *State v. Landrum*, 191 Wis. 2d 107, 119-20, 528 N.W.2d 36 (Ct. App. 1995)). Whether a jury could determine that the defendant committed the other acts is a question of law which we review de novo. *Bustamante*, 201 Wis. 2d at 570.

*State v. Gray*, 225 Wis. 2d 39, 59, 590 N.W.2d 918 (1999) (second alteration in *Gray*). If Smith intends to argue that C.D.'s testimony was inherently incredible or inconsistent, he fails to develop an argument. While C.D. couched his testimony in qualifications, the jury was free to treat the qualifications as indications that he was taking care to testify to only what he could be sure of.

9

¶25    Turning to the third step of the ***Sullivan*** test, whether the prejudicial effect of the North Dakota incident evidence substantially outweighs any probative value, Smith argues that "the strength of proof that Smith committed the proffered other acts is far too low to have any probative value in relation to the central issues at trial." In a similar vein, he argues that, "[a]t best, the other acts evidence" in this case "is only probative to prove that Smith acted in conformity with some propensity to seek sexual gratification from young children." These arguments do not come to grips with the relevance of the North Dakota evidence to Smith's sexual intent in touching A.B. in the charged incident and also fail to take into account the "greater latitude" rule that we are obligated to apply.

¶26    Unfair prejudice in this context "'is not whether the evidence harms the opposing party's case, but rather whether the evidence tends to influence the outcome of the case by improper means.'" ***State v. Payano***, 2009 WI 86, ¶87, 320 Wis. 2d 348, 768 N.W.2d 832 (quoted source omitted). And here, the cautionary jury instruction specifically addressed the North Dakota incident, directing the jury that it must avoid relying on this evidence for an improper purpose.[3] As the State

---

[3] The circuit court instructed the jury:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant was in a bedroom in a house in North Dakota when [A.B.] and [C.D.] were in bed in approximately 1987, and that the defendant touched [C.D.]'s penis in Sparta at a different time.
>
> If you find that this conduct did occur, you should consider it only on the issue of motive, intent, context or background. You may not consider this evidence to conclude the defendant has a certain character or a certain character trait [and that] the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

points out, we presume that jurors follow court instructions, and instructions can go "far to cure any adverse effect attendant with the admission of the [other-acts] evidence," *Sullivan*, 216 Wis. 2d at 791, and "substantially mitigate" any unfair prejudicial effect caused by the admission of other-acts evidence. *Hurley*, 361 Wis. 2d 529, ¶89. Regarding the North Dakota incident, Smith fails to present a developed argument that the cautionary instruction was inadequate.

¶27 Before moving on to the next set of other-acts allegations, we address a contention Smith makes regarding one aspect of the other-acts evidence collectively. The argument is that the prosecution in its opening statement and closing argument in effect improperly invited the jury to ignore the cautionary instruction and to find him guilty of sexually assaulting A.B. because he has the general motivation, or propensity, to molest children, based on all of the other-acts evidence. We agree with Smith that some statements by the prosecutor to the jury in both opening and closing could be interpreted to have been dangerously loose on the topic of Smith being "motivated by sexual desire for children." By making Smith's "motivation and desire to be gratified sexually by touching a young child" a theme—without carefully framing these comments as bearing only on Smith's

---

Evidence was received on the issue of motive[,] that is, whether the defendant had a reason to desire the result of the offense charged;

Intent[,] that is, whether the defendant acted with the state of mind that is required for the offense charged;

Context or background[,] that is, to provide a more complete presentation of the evidence relating to the offense charged.

You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to conclude the defendant is a bad person and for that reason is guilty of the offense charged.

11

intent at the time of the charged offense—the prosecutor's remarks might be interpreted to have crossed a line into a propensity argument. At the same time, however, the prosecutor's remarks could also be interpreted in a manner that is more consistent with the cautionary instruction—especially to a juror who took into account the more precise, legally sound direction on this topic in the court's cautionary instruction, which we are to presume the jury followed. For these reasons, we reject Smith's argument that the prosecutor's remarks contributed to unfair prejudice in the admission of the other-acts evidence.

### III. The Smith Apartment Incident

#### A. Additional Background

¶28 The following was the factual basis for the circuit court's pretrial ruling regarding an incident that we refer to as the Smith apartment incident. C.D. was quoted in the criminal complaint as telling police the following. When C.D. was "5 to 8," he "could not remember exact details but felt as though [C.D.] was sexually assaulted by" Smith in Smith's apartment in Sparta "based off the faint memories [C.D.] had as a child." C.D. "remembered lying in [Smith's] bed watching a movie," and he told the police, "[I]t seems like [Smith] was naked at that time.… It seems like I remember him rubbing me." Later, when C.D. saw a baked potato "ooz[ing]" "juice," this caused C.D. to think that C.D. had "more than likely witnessed [Smith] ejaculating at some point in time."

¶29 At trial, the prosecution elicited the following trial testimony from C.D. When C.D. was about 5, at some point he was alone with Smith in Smith's second-floor apartment in Sparta. "And for whatever reason I was in bed and I just have a feeling that I was being molested while I was watching" a television show featuring scuba diving. "All I can vaguely remember is [Smith] touching" C.D.'s

12

penis. When C.D. was older, he saw a potato cooking in a microwave and it made C.D. think of Smith and "[t]he only thing I can come up with is I thought it had something to do with ejaculation." But he had no direct memory of seeing Smith ejaculate.

### B. Analysis

¶30 As with the North Dakota incident and for a number of the same reasons, we conclude that the State has carried its pertinent burdens regarding the Smith apartment incident and we also conclude that Smith has not carried his pertinent burden.

¶31 Smith concedes that the Smith apartment incident evidence "is closer to the charged offense" in character than either of the other two sets of other-act evidence allegations. His argument on this issue focuses on the qualifications that C.D. made in this testimony, specifically that C.D. testified that he "just [had] a feeling that [he] was being molested" and that all he could "vaguely remember is [Smith] touching" C.D.'s penis. Based on these qualifications, Smith argues that C.D.'s testimony about the Smith apartment incident are insufficiently "concrete" to be relevant.

¶32 But C.D. testified to the memory that Smith touched C.D.'s penis while the two were in a particular physical location and during a general time frame, even if C.D. qualified his memory as being only "vague[]." The jury was free to interpret the concept of vagueness to mean that C.D.'s memories were only partial and in some respects indistinct, but not to mean that it was unlikely that the touching occurred. That is, the testimony provided a basis for a jury to find by a preponderance of the evidence that Smith did touch his penis and, if so, a basis to consider that fact as it might bear on Smith's sexual intent in touching A.B.'s

genitals on the charged occasion. C.D.'s potato-cooking reference, while resting on inferences, could have contributed to a finding that sexual activity by Smith occurred when C.D. was a child.

¶33 Smith asserts for the first time in his reply brief that the cautionary jury instruction given by the circuit court misstated the evidence by asserting that there was testimony that "the defendant touched [C.D.'s] penis in Sparta," but Smith fails to explain a problem with this summary reference. This is what C.D. testified to, even though he acknowledged that his memory was not strong or detailed.

## IV. The Family Home Incident

### A. Additional Background

¶34 The following was the factual basis for the circuit court's pretrial ruling regarding the incident that we refer to as the family home incident. A.B. was quoted in the criminal complaint as telling police the following. When A.B. was "between the ages of 7-10" and C.D. was "10-13," A.B. walked into the living room of the family's Monroe County house and saw C.D. "facing" Smith. C.D. was wearing only "underwear," by which we assume she meant only underpants. Smith "had his arms on" C.D. and "was shaking" C.D. The two were "yelling at each other." A.B. "didn't know what was going on and turned around and ran."

¶35 At trial, the prosecution elicited the following trial testimony from A.B. One day when A.B. was in third, fourth, or fifth grade, in her family residence, she was awakened by an argument between C.D. and Smith, with C.D. "sound[ing]

very loud." She came upon the two in the living room, arguing.[4] C.D. was wearing only "underwear." Smith had his hands on C.D.'s shoulders and was shaking him. She considered this to be odd behavior. "I was extremely scared and I ran … back to my room."

### B. Harmless Error

¶36 If a decision of a circuit court to admit other acts evidence was erroneous, reversal is not appropriate if the error was harmless and therefore not prejudicial. *Sullivan*, 216 Wis. 2d at 792; *see also* WIS. STAT. § 901.03(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ...."). Error is harmless "if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *State v. Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434. Whether an error was harmless presents an issue of law that we review de novo. *Id.*, ¶21.

> We use several non-exclusive factors to aid our application of the harmless error rule in the evidentiary context: (1) the frequency of the error; (2) the importance of the erroneously included or excluded evidence to the prosecution's or defense's case; (3) the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence; (4) whether erroneously excluded evidence merely duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case.

*State v. Monahan*, 2018 WI 80, ¶35, 383 Wis. 2d 100, 913 N.W.2d 894.

---

[4] The transcript quotes A.B. as also testifying that the two were "shuffling," which might have been a faulty rendering of her saying or attempting to say "scuffling." But the reference is ambiguous and in any case it would not matter to our analysis what word A.B. used that caused the court reporter to record the word "shuffling."

### C. Analysis

¶37    We assume without deciding that the State has not carried its pertinent burdens, and therefore it was error for the circuit court to allow the admission of evidence regarding the family home incident. Having made those assumptions, we conclude that it is clear beyond a reasonable doubt that a rational jury would have found Smith guilty absent the assumed error.

¶38    It is highly significant to this issue that the family home incident would have presented the jury with more of a puzzle than anything else. It does not necessarily reflect badly on Smith. Essentially, a young person was scared and thought it odd that Smith and her brother had a loud argument during which Smith shook him by the shoulders, and C.D. was wearing only underpants. A.B. did not suggest that there was anything sexual about the incident. Indeed, she did not relate any content from the argument, sexual in nature or otherwise. It is not necessarily unusual for young boys to wear only underpants in various rooms of their own residences, including in the presence of an uncle. It is also not necessarily unusual for adult relatives of children to get into arguments, which might briefly become loud, with children for reasons that have nothing to do with sexual activity, which could innocently be accompanied by briefing taking the child by the shoulders and shaking them. A.B. did not testify that the shaking was violent.

¶39    In addition, the prosecution appeared to make no special use of the family home incident, and defense counsel in closing argument had reasonable points to make:

> Now, if there's something about the way that mundane things are perceived by these people when they were young, [Smith] with his hand on [C.D.'s] shoulders shaking him, right; was it discipline? Were they [] arguing

about something? Was it, "Go to bed," and [C.D.] refused? We don't know that.

I think [there's] a very reasonable explanation for what [A.B.] saw and regarded as something weird and perhaps even sexual. But that hyper-reaction is just curious, and we can't get to the root of it because these are 30-year-old allegations.

¶40 It is obvious that the jury, in returning guilty verdicts, credited A.B.'s testimony about how Smith touched her genitals. It is certainly possible that the jury also credited her testimony about the family home incident. But we see no reason to think that the latter testimony, about an animated argument on an unknown topic that included some shoulder shaking, would have made convictions on the charged offenses even slightly more likely.

¶41 For a case of this type, the prosecution's evidence was not notably strong but it also was not notably weak. A.B.'s testimony was not equivocal. It also contained some vivid detail, such as that Smith's hands "felt very itchy and scratchy" to her and that he "smelled like lumber" from his workplace. She testified that she tried to report the incident at the time, but did not get the support that she needed at that time, and that she lived with the "significant emotional trauma" for many years, until she finally reported it to police. Relatives testified that they were contemporaneously aware of the allegations. On the other side of the equation, the charged sexual assault occurred many years earlier and there was no directly corroborating evidence.[5]

---

[5] Smith cites to the criminal complaint for the allegation that A.B.'s sister told police that she was surprised by A.B.'s statements about the sexual assault by Smith and also said that A.B. was "a drama queen when she was a young child," but this was not evidence introduced at trial.

¶42    In sum, the assumed error regarding admission of the family home incident was harmless.[6]

## CONCLUSION

¶43    For all of these reasons, we affirm the judgment of conviction.

*By the Court*.—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Smith argues that "the 'real controversy was not fully tried' because the [circuit] court's erroneous admission of highly prejudicial innuendo designed to show that Smith had a sexual desire for children 'so clouded' the 'crucial issue' of whether the [S]tate proved beyond a reasonable doubt that Smith was guilty of the charged crimes," citing *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996).  We reject this argument, which is based entirely on the admission of the other-acts evidence, for the reasons stated in the text.